JOHN R. ROGERS AND JUDY C. ROGERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rogers v. Commissioner
Docket No. 23393-91
United States Tax Court
T.C. Memo 1993-444; 1993 Tax Ct. Memo LEXIS 454; 66 T.C.M. (CCH) 828; September 23, 1993, Filed *454 Decision will be entered under Rule 155. John R. Rogers, pro se. For respondent: John W. Sheffield III. GOLDBERG
GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Addition to Tax
Year
Deficiency
Sec. 6651(a)(1)
1986
$ 2,069
$ 414
1988
150
14
The issues for decision are (1) whether amounts received by petitioner John R. Rogers from Cirrus Electric, Inc. in 1986 and 1988 are includable in petitioners' gross income for these years, or are these amounts nontaxable repayment of loans, and (2) whether petitioners are liable for the additions to tax under section 6651(a)(1) for failing to file their Federal income tax *455 returns timely. Some of the facts were stipulated and are found accordingly. The stipulation and attached exhibits are incorporated by reference. Petitioners resided at North Myrtle Beach, South Carolina, when their petition was filed. John R. Rogers (hereinafter referred to as petitioner) is an electrician by trade. He worked for Westinghouse Electric in Muncie, Indiana, for 10 years, leaving in 1973 to return to his home state of West Virginia. There he worked as an electrician for O. Ames Co. in Parkersburg, West Virginia, until 1977. While working for O. Ames Co. in Parkersburg, petitioner lived in Grantsville, about 50 miles away, where he had a farm. During his employment with O. Ames Co., petitioner started his own independent electrical contracting activity, gradually building up a clientele to the point that he was able to establish his own business. Petitioner obtained a contractor's license in Virginia in 1983 or 1984, and began seeking work there in addition to West Virginia. Around that time, petitioner began a partnership with his brother-in-law, Jesse Browning (Mr. Browning), for subcontracting electrical work. In 1985, the partnership was awarded three subcontracts *456 for work on water and sewer plants in West Virginia and Virginia with an aggregate value of between $ 350,000 and $ 400,000. The partnership needed additional capital to hire workers and purchase materials necessary to begin work under the contracts. Petitioner contributed his own savings to the partnership for those purposes. Mr. Browning did not contribute money to the partnership. On October 29, 1985, petitioner and Mr. Browning, d/b/a Cirrus Electric, executed a demand note bearing no interest, promising to pay to petitioner the sum of $ 36,000 from "the proceeds of Cirrus Electric." The note further provides: It is understood by the makers, and bearer, that this $ 36,000.00 is in no manner to be construed as being part of the ordinary 50% profit of Cirrus Electric due John Rogers, bearer, as 50% partner in Cirrus Electric.
As a condition for one of the contracts, petitioner and his partner were required to post a performance bond. In order to obtain the requisite performance bond, the partnership's contracting business was incorporated in Virginia in February 1986, as Cirrus Electric, Inc. (Cirrus). Petitioner and Mr. Browning each owned 50 percent of the stock, *457 and petitioner served as president of the new corporation. During the incorporation process, petitioner showed the promissory note he and Mr. Browning had signed with respect to the $ 36,000 he contributed to the partnership to the attorney who performed the legal work for the incorporation. At trial, petitioner testified that he told the attorney he wanted to make sure he would be able to get this money back as soon as the corporation was financially able to return it to him. Petitioner did not know how the loan to the partnership was treated by the attorney for corporate purposes, but a March 1, 1986, financial statement for Cirrus reflects as a liability an unsecured note in the amount of $ 36,000, with the notation that $ 10,000 had been paid on the note and the balance remaining was $ 26,000. Petitioner produced no other corporate records concerning the note. The corporate Federal income tax returns, Form 1120, of Cirrus for 1986, 1987, and 1988, each reflect on Schedule L, Balance Sheets, common stock in the amount of $ 6,000. The 1986 return is the initial return of the corporation. Each of the corporate returns was prepared by a certified public accountant, David M. *458 Robinson, and signed by petitioner as president of Cirrus. On the corporate return for 1986, a balance sheet entry under "Loans to stockholders" shows the amount of $ 40,313 at the end of tax year 1986. No amount is reflected in the liabilities section for "Loans from stockholders" for 1986. An attached schedule setting forth answers to questions under the category, "Additional Information", shows that the "highest amounts owed to the owners" during 1986 was $ 20,450 owed to Jesse Browning, and $ 19,863 owed to John Rogers. No deduction was taken by Cirrus for compensation of officers on the 1986 return, and no entries were made on the return under Schedule E, Compensation of Officers. Cirrus reported a $ 25,383 loss in 1986. On the 1987 Cirrus tax return, the balance sheet entry for "Loans to stockholers" at the end of the tax year is $ 30,053. No amount is reflected as a liability under "Loans from stockholders". No amounts are shown as Compensation of Officers, but Schedule E states that petitioner's time devoted to the business that year was 100 percent, while Mr. Browning's time devoted to the business was 10 percent. Cirrus reported a loss in the amount of $ 6,761 for *459 1987. The 1988 tax return for Cirrus shows "Loans to stockholders" at the end of the tax year in the amount of $ 10,678, and "Loans from stockholders at year end in the amount of $ 1,039. As in prior years, no amount is shown as Compensation of Officers. Schedule E reflects that the percentages of time devoted to the business by petitioner and Mr. Browning were 90 percent and 20 percent, respectively. Cirrus reported a loss of $ 6,881 for 1988, before a net operating loss deduction in the amount of $ 6,761. Although Cirrus reported no compensation paid to officers on any of the three corporate tax returns in evidence, on the 1987 and 1988 corporate returns, attached schedules detailing "other deductions" show management fees paid to John Rogers in the amounts of $ 7,425 for 1987 and $ 5,271 for 1988. Petitioner reported these amounts on Schedules C attached to petitioners' 1987 and 1988 individual income tax returns. In the notice of deficiency for 1988, respondent determined that the amount reported as income on petitioners' Schedule C is not taxable on petitioners' individual return, and decreased taxable income by $ 5,271. Respondent in the notice of deficiency determined *460 that petitioner received taxable income in the amounts of $ 25,185 and $ 9,341.98 in 1986 and 1988, respectively, as compensation for services rendered to Cirrus. Before trial, the parties stipulated that the above amounts should be reduced to $ 22,685 and $ 5,985 for 1986 and 1988, respectively. Petitioner does not dispute that he received such amounts but contends that such amounts were received in repayment of his 1985 $ 36,000 loan to the business partnership. We assume that petitioner's position is that Cirrus assumed the obligation to repay the partnership debt. Respondent's determination is presumed correct, and petitioner bears the burden of showing that the amounts he received from Cirrus are not taxable compensation for services. Rule 142(a). On this record, we conclude that petitioner has not carried his burden of proof. Apart from the financial statement of March 1, 1986, petitioner produced no corporate books or records showing that Cirrus treated the partnership note as an obligation of the corporation, nor any corporate records reflecting that amounts paid to petitioner during 1986 or 1988 were classified by the corporation as repayment of a stockholder loan *461 from petitioner. The corporate tax returns do not support petitioner's position. The yearend balance sheets of the 1986 and 1987 corporate tax returns do not show any amounts due on loans to the corporation from shareholders, and the 1988 return reflects only $ 1,039 for loans from shareholders at year end. In contrast, each of the corporate return balance sheets reflects amounts due Cirrus on loans from the corporation to shareholders, ranging from $ 40,313 at the end of 1986 to $ 10,678 at the end of 1988. A schedule attached to the 1986 corporate return does reflect that the corporation owed money to both petitioner and Mr. Browning during 1986, but the amount designated as the "highest amount due" petitioner during that year is only $ 19,863, significantly less than the amount petitioner claims he was repaid by the corporation during 1986 and 1988 on the $ 36,000 loan to the partnership. Additionally, the schedule attached to the 1986 corporate return reflects that Cirrus owed Mr. Browning as much as $ 20,450 during 1986, but petitioner testified that Mr. Browning did not loan any money to Cirrus. In sum, we are unable to reconcile the information from the corporate tax returns *462 and petitioner's contention that the disputed amounts he received from Cirrus were repayment of a loan to the corporation. Salary arrangements and other transactions between a closely held corporation and its shareholders warrant close scrutiny. Spicer Accounting, Inc. v. United States, 918 F.2d 90, 92 (9th Cir. 1990); Elliotts, Inc. v. Commissioner, 716 F.2d 1241, 1243 (9th Cir. 1983), revg. T.C. Memo. 1980-282; Tulia Feedlot, Inc. v. United States, 513 F.2d 800, 805 (5th Cir. 1975). The note petitioner contends was being repaid by the corporation was unsecured, payable on demand, and bore no interest. Petitioner regularly performed substantial, valuable services for Cirrus but characterized none of the payments he received as compensation for services. On this record, we hold that petitioner has not shown respondent's determination to be in error. Therefore, respondent is sustained on this adjustment. The remaining issue for decision is whether petitioners are liable for the additions to tax under section 6651(a)(1). Section 6651(a)(1) provides for an addition *463 to tax in the amount of 5 percent of the amount of the tax if the failure to file is for not more than 1 month, with an additional 5 percent for each month in which the failure to file continues to a maximum of 25 percent of the tax in the aggregate. The addition to tax is applicable unless it is shown that the failure to file is due to reasonable cause and not due to willful neglect. Petitioners stipulated that their 1986 and 1988 tax returns were filed untimely. Petitioners have not shown that the late filing was due to reasonable cause. Respondent's determination that petitioners are liable for the addition to tax for late filing under section 6651(a)(1) is therefore sustained. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩